W. E. HUGHES v. S. W. S. DUNCAN ET. AL.

(Case No. 4033.)

1. FACT CASE — FORECLOSURE SALE UNDER JUDGMENT.— When, without the knowledge of the judgment creditor, in whose favor a judgment had been rendered, ordering the sale of specific land to which a lien attached, execution issued under which the land sold for one-fortieth of its real value, the sale was set aside, on proceedings instituted by injunction after the sale and before the payment of the sum bid, it being shown that the sale was made in violation of an agreement between the debtor and creditor for indulgence, and both uniting in proceedings to set it aside.

APPEAL from Dallas. Tried below before the Hon. Geo. N. Aldredge.

This suit was brought October 4, 1877, by appellant Hughes against M. M. Moore, sheriff of Dallas county, and S. W. S. Duncan, to restrain the sheriff from making a deed to Duncan for a piece of land which Duncan had bid off at a foreclosure sale made

by the sheriff, and from receiving from him the amount of his bid. The petition set forth, *inter alia*, that in June, 1877, plaintiff had recovered against F. E. Guedry and his wife, V. Guedry, a judgment for $666.89, and for foreclosure of vendor's lien upon the land in question; that he had agreed with Guedry that if he would not appeal from the judgment and would pay a part of said judgment in cash, no execution should issue upon the judgment without notice to him, and that Guedry had paid, etc. But that, without the knowledge of plaintiff, the clerk had, on August 22, 1877, issued an order of sale, under which the sheriff had offered the property for sale on September 2, 1877, and defendant Duncan had bid off the same for $25. That neither plaintiff nor his attorney was present or knew anything of the sale. That plaintiff, upon learning these facts, did, on the same day, inform the sheriff and Duncan that the sale had been made by mistake and without the order of plaintiff, and instructed the sheriff not to make the deed or to receive the amount bid. Whereupon the defendant Duncan tendered the amount to the sheriff and demanded a deed; that the sheriff, unless restrained by injunction, would receive the money and make the deed, to the irreparable damage of plaintiff. That the property is worth $1,200; that Guedry and wife were insolvent; and that this property is the only source from which he could collect his judgment against Guedry and wife; that the money had not yet been paid or the deed delivered; that the order of sale was still in the hands of the sheriff.

Prayer that Guedry and wife be served with process and made parties, for the writ of injunction, for judgment declaring the sale void, canceling the same, and for general relief. The injunction issued the same day.

On the same day (October 4, 1877), the defendant answered by a general demurrer and a specific denial under oath of each and all the allegations in the petition upon which plaintiff rested his claim for relief.

October 5, 1877, the defendant moved to dissolve the injunction, because:

1st. There are no equities on the face of the petition.

2d. All the equities set up are denied in the answer under oath.

October 16, 1877, plaintiff amended, setting out more specifically his grounds of claim for relief. The amendment was sworn to.

October 18, 1877, the defendant Moore answered by a general demurrer and a general denial. On the same day the defendant

Duncan filed a lengthy amendment under oath, in which he traversed the allegations of the amended petition.

January 23, 1879, Guedry and wife appeared, and, adopting the allegations of the original petition, prayed that the pretended sale be set aside, and for general relief.

December 11, 1879, the cause was submitted to the court without a jury, and judgment was rendered in favor of the defendants Duncan and Moore against the plaintiff and the defendants Guedry and wife.

Appellants assign for error:

1st. The evidence shows that the sale was made through mistake, without the knowledge of appellants, for a grossly inadequate price — for only one-fortieth part of its value.

2d. Appellants were not guilty of negligence in not attending the sale, because none of them knew that the order of sale had issued, and they had entered into an agreement that no such order should issue at that time.

3d. In holding that to set aside the sale for irregularity or mistake, there must have been irregularities or mistakes of the sheriff or the purchaser, and that such irregularities and mistakes, coupled with the gross inadequacy of price, were not sufficient to set aside the sale.

*A. T. Watts*, for appellants.

*Eblen & Robertson*, for appellee.

DELANY, J. COM. APP.—This suit was brought, not exactly to rescind a sale, but rather to prevent its consummation. A sheriff's sale is not complete until the purchase money is paid. Up to that time the bidder may recede from his bid, being, however, liable to a penalty, and the sheriff may readvertise and sell the property. Pasch. Dig., art. 3786; R. S., art. 2321.

The defendant in this case, then, in pressing his claim to the property, occupies, to a limited extent at least, the position of a party seeking the specific performance of a contract. The rule is almost universally accepted that inadequacy of price alone is not sufficient to justify the annulment of an execution sale. "But," says Mr. Freeman, "occasional cases of great hardships arise, and result in the questioning of the general rule; . . . or if the rule is not questioned, the court will, at least, look anxiously for some reason whereby, without disputing the general rule, it may justify itself in

declaring that the rule is not applicable to the case before it." Freeman on Ex., 309. Accordingly, in Allen v. Stephanes, 18 Tex., 672, the chief justice says: "In cases where the disproportion is so enormous as this, but slight additional circumstances will justify the inference that the sale is fraudulent." In that case, property worth $600 had been sold for $21.50.

So in Chamblee v. Tarbox, 27 Tex., 145, Justice Moore adopts expressions which the courts have used for nearly a century, as follows: "If the bargain is such as no man in his senses would make, and that no honest and fair man should accept, and there are circumstances attending the sale which may have operated to prevent the property from bringing a higher price, although at the time they may, in fact, have been unknown to the purchaser, the sale will be regarded by the court as, in its legal sense, fraudulent."

In both these cases the sales were collaterally attacked.

In Ballard v. Anderson, 18 Tex., 377, where a large amount of property was sold in bulk for a trifling sum, and the purchaser brought suit to enforce the contract, the sale was held void upon general demurrer.

In Taul v. Wright, 45 Tex., 395, Justice Moore says: "Where there is enormous inadequacy of price at a sheriff's sale, if there be but slight irregularities or other circumstances attending it, calculated to prevent the property from bringing something like its reasonable value, it is regarded as unconscientious in the purchaser to hold the property so purchased and his deed will be canceled." This was a direct proceeding to set aside the sale.

The case of Johnson v. Crawl, 55 Tex., 571, bears a striking resemblance to the present, and seems decisive of it, with this difference: that the property was there sold for half its value and here it brought only about one-fortieth part. In that case Chief Justice Gould uses this language: "Although both the sheriff and the purchaser were guiltless of any intentional wrong, if the sale were had under circumstances which made it unfair to the judgment creditor, and which were also unfavorable to a fair price, the purchaser at such sale becomes so far a participator in the wrongful or improper manner in which it was made, that he is in no condition to object to the extension of relief to one otherwise entitled to it."

The court below seems to have imputed negligence to the plaintiff, but it seems to us that his mistake can be attributed to nothing more serious than inadvertence, and hardly deserves to be visited with a penalty so heavy.

Thus in the case of Ontario Bank v. Lansing, 2 Wend., 260, where

the plaintiff in an execution inadvertently made a serious mistake in the amount of his bid, the court upon his application set aside the sale. See, also, the authorities in Freem. on Ex., 308.

But even if the plaintiff be not entirely blameless, certainly negligence cannot be imputed to the defendants Guedry and wife, who are equally interested that this property should bring a fair price and who join in the prayer for relief.

In the interests of the due administration of justice we think that the judgment should be reversed, and that such judgment should be rendered by the supreme court as should have been rendered below, that is, judgment for appellants.

REVERSED AND RENDERED.

[Opinion adopted June 26, 1883.]