JONES et al. v. FINK et al.   (No. 7661.)

(Court of Civil Appeals of Texas. Galveston. Feb. 11, 1919. Rehearing Denied March 6, 1919.)

1. APPEAL AND ERROR ⊜⟿1011(1)—REVIEW— CONFLICTING EVIDENCE — PROVINCE OF COURT.

It is for the trial court to resolve a conflict in the evidence; the province of the Court of Civil Appeals being limited to a determination of legal sufficiency of the evidence to support the findings.

2. HOMESTEAD ⊜⟿96—ENFORCEMENT OF VENDOR'S LIEN.

Purchasers could not defeat foreclosure of vendor's lien on ground that land was a homestead because of having lived on land prior to execution of vendors' lien notes, where, prior to the execution of such notes, the purchasers had, by a conveyance made in good faith and fully consummated, conveyed land to vendors, notwithstanding Const. art. 16, § 50.

3. HOMESTEAD ⊜⟿94—FORECLOSURE OF VENDOR'S LIEN—ACQUISITION OF HOMESTEAD RIGHTS AGAINST MORTGAGEE.

Makers of vendors' lien notes could not defeat foreclosure of lien by claiming land as homestead, where makers had joined mother in executing mortgage on land to vendors at time when the property was mother's exclusively, and where mortgage was unpaid at time of conveyance of land to vendors and reconveyance to makers.

4. HOMESTEAD ⊜⟿118(4)—DEEDS—SIGNATURE OF WIFE.

Where mortgagee canceled mortgage in consideration of conveyance to him of land, and thereafter reconveyed land to mortgagors, and accepted vendors' lien notes to secure purchase money, the fact that wife of one of the mortgagors did not acknowledge deed until after reconveyance did not, in the absence of fraud, affect its validity, even though it conveyed the homestead.

5. APPEAL AND ERROR ⊜⟿518(4)—RECORD— TRANSCRIPT—ORIGINAL PETITION.

In view of Court of Civil Appeals rules 14, 84 (142 S. W. xviii, xxiii), where case was tried

⊜⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and judgment rendered on amended petition, the original petition was improperly included in the transcript.

**6. APPEAL AND ERROR ☞195—PRESENTATION OF ERROR—DISCREPANCIES IN PLEADING.**

Discrepancies between original and amended petitions will not be considered as fundamental error on appeal, where attention of trial court was not called thereto by defendants in their second amended original answer.

**7. PLEADING ☞250—PETITION—AMENDMENT —DIFFERENT CAUSE OF ACTION.**

In vendor's action against purchaser, there was no fundamental repugnance nor irremedial inconsistency between original petition, praying, in the alternative, for foreclosure of lien and for judgment against defendants on the notes, and amended petition seeking foreclosure of lien and a judgment for the debt.

Appeal from District Court, Burleson County; R. J. Alexander, Judge.

Action by Sam Fink and others against Thomas Jones and another, in which defendants in answering impleaded P. L. Levinson. Judgment for plaintiffs, and defendants appeal. Affirmed.

E. J. Fountain, Jr., of Houston, for appellants.

Mathis, Teague & Mathis, of Brenham, Bowers & Bowers, of Caldwell, and Lawrence Sochat, of Houston, for appellees.

GRAVES, J. This suit was tried below upon the amended petition of plaintiff Fink, one of the appellees here, which declared upon some vendor's lien notes in the aggregate sum of $2,500, together with interest and attorney's fees, alleged to have been executed by the appellants Thomas and Joseph Jones, and sought foreclosure of such lien upon two tracts of land described in the notes. The notes had been originally given to B. L. Levinson, who contemporaneously therewith had deeded the land to appellants, retaining the vendor's lien in both the deed and notes; Fink acquired the notes and the lien from Levinson.

In answering Fink's suit appellants impleaded Levinson, in effect alleging that on, before, and since the date of his deed to them and of their notes to him, October 15, 1915, they were each living upon and occupying with their families one of the two tracts of land as a homestead; that, although they both were then indebted to Levinson, no part of it was secured by any valid lien upon these lands; that on the date given Levinson induced them and their wives to convey the lands to him in cancellation of their pre-existing indebtedness, upon the representation that such plan would rid them of some heirs who had been claiming the property adversely to them, and under agreement that if they would do so, he would then at once

sell the land back to them, giving them eight years within which to pay for it; that on the same day he did make the reconveyance to and exact of them the vendor's lien notes herein sued upon by Fink; that the sale by appellants to Levinson and his reconveyance to them were not real, but simulated transactions, and amounted merely to a devise for ingrafting an apparent lien upon the homestead in violation of the Constitution. Further averments were that Fink had notice of all the facts pleaded at the time the notes and alleged lien were transferred to him by Levinson, but if not, and he should be found to be an innocent purchaser, that under the facts Levinson became a trustee, and they sought recovery of their resulting damages from him. Levinson answered and joined issue upon the matters pleaded as to him.

The case was tried without a jury. The trial court found the sale and reconveyance to be bona fide transactions, rendered judgment against appellants for the principal, interest, and attorney's fees provided for in the notes, for foreclosure of the lien therein retained upon the land, and decreed that appellants take nothing by their cross-action against Levinson. From that judgment this appeal is prosecuted.

Under the first two assignments it is contended that the court erred in decreeing a foreclosure of the vendor's lien declared upon, because it is said the undisputed evidence, or at least its great weight and preponderance, "showed that the land covered thereby was the homestead of the defendants; that no part of the debt claimed to be secured by said lien was for taxes, improvements, or purchase money of or on said land; and that the sale and reconveyance by which such lien was apparently fixed upon said land was merely a device by which the codefendant Levinson, to the knowledge of the plaintiff Fink, attempted to ingraft an apparent lien upon appellants' homestead, in violation of section 50 of article 16 of the Constitution of Texas."

Upon the issue thus raised the trial court found these facts: That Sally Early, the mother of appellants, who died intestate prior to the institution of this suit, some time before her death, while a widow and when she owned the lands here involved as her individual property, gave a deed of trust thereon to a Mr. Hitchcock to secure a note for $1,075, which instrument her sons, the appellants here, executed with her. The findings then continue:

"That in the fall of 1915, said Tom Jones and Joe Jones were indebted to said B. L. Levinson in the sum of $1,075, with a year's interest and attorney's fees, and that this indebtedness was secured by a deed of trust on the two tracts of land involved herein, being the trust deed given by the defendants and their mother, during her lifetime, to Hitchcock, and transferred by Hitchcock to Levinson. In addition

to the indebtedness, the defendant Tom Jones was indebted to said Levinson for supplies furnished him, this indebtedness being evidenced by a note for $505; that in the fall of 1915, said B. L. Levinson was pressing the defendants for a settlement of both of these debts, and the defendants were unable to pay either of said debts; that as a result these defendants and said B. L. Levinson met in the office of Messrs. Bowers & Bowers, attorneys, at Caldwell, Tex., which meeting took place at about 9 o'clock a. m. on October 15, 1915; that the defendants at that time agreed to make a deed to the two tracts of land involved herein, to the said B. L. Levinson, in full settlement of the two debts as above set out; that the question of making such deed with the understanding that it was to be retransferred was broached by defendants, but that the said B. L. Levinson refused to take the deed with any agreement to retransfer; that the deed was made, executed, and delivered by the two defendants and their wives to said B. L. Levinson, without any conditions or agreements to hold same in trust, or to reconvey; that it was a straight warranty deed, conveying without reservation, either written or parol, the two tracts of land involved herein; that this transaction took place in the forenoon, about 9 o'clock, and when the deed was passed the transaction was closed and complete; that the consideration in said deed was the cancellation of the notes, as stated, and the notes were actually delivered to the defendants for cancellation; and that it was a valuable and adequate consideration for said transfer.

"That after the passing of the deed above stated, the defendants approached said B. L. Levinson and asked him to sell said land back to them, and that they make a trade with Levinson for him to sell said two tracts of land to them for a consideration of $2,500; that this trade was made in the afternoon of the same day that transfer was made to Levinson, but the two were separate and distinct transactions; that the parties met in the office of the attorneys, and Levinson made, executed, and delivered his general warranty deed, conveying said two tracts of land to the defendants; that the consideration expressed in said deed was $3,000, $500 in cash, and the series of notes upon which foreclosure is sought herein; that said $500 in cash was in fact never passed, but the true consideration was the series of notes mentioned and described in the plaintiff's petition; that this transaction was not simulated, but that each transaction was distinct and separate, and complete within itself; that said transactions were not made for the purpose of taking the land in trust for the use of defendants, but that said deeds were bona fide transactions, and that each conveyed the lands as stated; that under the last-mentioned deed, and in the notes upon which the foreclosure is sought herein, the defendants became indebted to said B. L. Levinson in the sum of $2,500."

[1] After a careful examination of the statement of facts, we are unable to agree with appellants, concluding rather that these findings had ample support in the testimony. It is true there was a pronounced conflict, but the authority to resolve that lay with the trial court, and this court's province is limited to a determination of the legal sufficiency of the evidence to support the findings there made. Nor is it deemed necessary to further review the record here. Appellants testified one way, Levinson and the attorneys another, the court below chose between them, and in such circumstances this court is not at liberty to find otherwise.

[2, 3] With much ability appellants insist, however, that since each of them was, throughout the course of the proceedings above detailed, shown to be living with his family upon one of the tracts of land and claiming it as his homestead, they could not be deprived of their homestead rights therein through this foreclosure decree. That position could in no event be tenable under the court's finding that the conveyance they made to Levinson was in good faith fully consummated before he agreed to resell the lands to them; but even if it were another consideration strips it of force here, and that is, appellants were in no position to acquire homestead rights in these two tracts of land against Levinson and his assignee Fink, because the latter held prior unpaid equities and incumbrances against the lands, which were superior to the homestead claim. Recurrence to the findings shows that appellants themselves joined their mother, before her death and when the property was her's individually and exclusively, in incumbering it with the Hitchcock deed of trust, which was never satisfied until the cancellation of the note it secured and of the $505 note formed the consideration to them from Levinson, who then owned both notes, for their deed to him of October 15, 1915. While the $505 note seems to have been the obligation of Tom Jones alone, and carried no lien, there can be no question that the Hitchcock note was secured by a valid lien upon both tracts of land; indeed, Tom Jones himself so testified. In return for their deed, which was then delivered to him, Levinson canceled and gave these two notes to appellants. Against this state of facts, it is not thought their homestead claim could prevail. Clements v. Lacy, 51 Tex. 150; Baker v. Collins, 4 Tex. Civ. App. 520, 23 S. W. 495; Cahill v. Dickson, 77 S. W. 289; De Bruhl v. Maas, 54 Tex. 473.

[4] Notwithstanding this situation, it is still said, however, that the wife of Joe Jones did not acknowledge the deed conveying the land to Levinson until the next day after he had reconveyed it to appellants in ostensible consideration of the $2,500 in vendor's lien notes, thereby making it inoperative as to her, and at the same time demonstrating that the two transfers could not have been separate and distinct transactions in the sequence found by the court; but here again, we think, the facts stand in the way, the court finding:

"That prior to her death said Sallie Early borrowed money from one F. H. Hitchcock, and to secure its payment executed and delivered a

dced of trust on the two tracts of land involved in this suit; that said Sallie Early died intestate, and the two tracts of land in controversy were inherited by the two defendants herein; and that the land passed to them, charged with the Hitchcock debt and deed of trust."

It thus appears that these lands came to appellants by inheritance, that is, as their separate property, charged with an admittedly valid incumbrance they had themselves joined in placing thereon before their interest attached. Moreover, the record does not disclose whether at that time they were even possessed of the better halves, their wives. Surely, in such circumstances, the fact, if such it be, that one of the wives did not acknowledge the deed to Levinson until one day after its execution and delivery to him could not affect its validity. There is no contention here that Joe Jones did anything to defraud his wife, and in a case of that character the courts have gone so far as to hold that the husband, in adjusting a prior lien, may convey the homestead without joinder of the wife at all. Evans v. Marlow, 149 S. W. 347.

Under the third and fourth assignments the judgment is assailed as fundamentally erroneous, because, it is claimed, the record shows upon its face that appellee Fink, by his original petition, declared upon his right to recover the land described therein as a consequence of appellants' failure to pay the notes, thereby electing to rescind his contract of sale to them and barring himself from thereafter standing upon and essaying to enforce it, as in effect he did in the amended petition by seeking a foreclosure of his lien.

[5] As was recited at the outset, the case was tried and the judgment rendered upon the amended petition. While the original petition was included in the transcript, it does not appear to be properly there, since the statutes and rules provide that amended pleadings shall take the place of original ones, and the latter shall no longer be regarded as a part of the record of the case, except under conditions not here presented. Rules 14 and 84 (142 S. W. xviii and xxiii).

[6] Neither did the appellants in their trial pleading, which was their second amended original answer, in any manner set up the alleged discrepancies now presented as constituting fundamental error. In this state of the record, manifestly this court is unable to say that any such error appears upon the face thereof.

[7] But even if the original petition could and should be looked to and compared with the amended one, there was neither fundamental repugnance nor irremediable inconsistency; the former alleged the execution and delivery of the conveyance by Levinson to appellants, that notes were given in payment therefor, that the vendor's lien was reserved in both deed and notes to secure their

payment, and prayed in the alternative—should the court be of opinion there was an equity in the land for defendants, or that it might sell for more than the debt—for a foreclosure of the lien upon the land, and for judgment against the defendants on the notes, whereas the amendment, filed before judgment, sought a foreclosure of the lien and a judgment for the debt. No advantage was gained by the one and no detriment visited upon the others of the litigants by such an ad interim change in the form of the pleading; it amounted at most, we think, to a choice between two remedies based upon the same substantial right, which has often been held to be permissible. Johnson v. Bank, 198 S. W. 991; Stone Cattle Co. v. Boon, 73 Tex. 555, 11 S. W. 544; Ufford v. Wells, 52 Tex. 617.

The conclusions stated require the overruling of all assignments and the affirmance of the judgment, which order has been entered.

Affirmed.