R. E. Brooks v. Wm. J. O'Connor et al.

No. 5440. Decided March 4, 1931.
(39 S. W., 2d Series, 14.)

*R. H. Ward, Morris, Sewell & Morrris* and *A. M. John,* for appellant.

*H. W. Wallace* and *J. T. Linebaugh,* for appellees.

Mr. Commissioner Critz delivered the opinion of the court.

On February 13, 1913, J. M. Rosborough conveyed, by general warranty deed, to E. F. Booty, the land in controversy in this suit, being all of Farm Tract No. 31, J. M. Rosborough Subdivision of the Valentina Garcia Four League Grant, in Jackson county, Texas, retaining the vendor's lien to secure four notes for $1,050 each, due on or before one, two, three and four years from date, respectively, all payable to

J. M. Rosborough. The vendor's lien was retained in the deed in the usual and customary language. In legal effect the deed also retained in Rosborough the superior title in the land to secure the payment of the notes.

On March 28, 1914, Rosborough, for a recited consideration of $4,528.03, conveyed and assigned the above four notes to Wm. J. O'Connor, executor of the estate of Thos. M. O'Connor, deceased. This transfer was by written instrument, and expressly conveyed the vendor's line and superior title in the land to the above grantee.

On the same date that Rosborough assigned these notes to O'Connor, March 28, 1914, E. F. Booty and wife, Gertrude Booty, executed to James McDonald, as trustee for Wm. J. O'Connor, executor, a deed of trust on the land in question to secure a note of even date with the deed of trust in the sum of $4,528.03, the amount paid to Rosborough by O'Connor for the four original notes. This last note matured March 28th, 1919, and bore eight per cent interest. This deed of trust recited the fact that the $4,528.03 note thereby secured was given to take up and extend the four original vendor lien notes above described, and expressly preserved and carried forward the original lien, equities and superior title as they theretofore existed.

Later, on October 5th, 1915, E. F. Booty and wife, Gertrude Booty, executed to L. W. O'Connor, trustee for Wm. J. O'Connor, executor, a deed of trust to secure a note for $4,890.27, maturing October 5, 1923, bearing seven per cent interest. This last note and deed of trust recites the fact that it is to take up and extend the note of March 28, 1914, for $4,528.03. Also this last deed of trust preserves and brings forward the original vendor's lien and superior title in the land in question.

Both of the deeds of trust before mentioned cover the 160 acres of land conveyed to E. F. Booty by Rosborough above described.

Later, on January 20th, 1930, E. F. Booty and wife, Gertrude Booty, executed and delivered to L. W. O'Connor, trustee for Wm. J. O'Connor, executor, a blanket deed of trust on eight tracts of land in Jackson county, Texas, and one tract of land in Victoria county, Texas. The acreages of the Jackson county land are as follows: 213.1 acres, 160 acres, 160 acres, 127.3 acres, 160 acres, 187.3 acres, 279½ acres and 80 acres. The Victoria county tract contained 251.3 acres. The 160-acre tract involved in this suit is one of the Jackson county tracts. This last deed of trust was given to secure a note for $4,500, dated of even date with the deed of trust, due December 20th, 1920, and bears eight per cent interest. This deed of trust recites the fact that it is second and inferior to nine several deeds of trust that are held by O'Connor, executor, against the nine several tracts included in the last blanket deed of trust. In other words, we conclude from the wording of this last deed of trust that the O'Connor estate already held a separate and independent indebt-

edness secured by a separate and independent deed of trust against each of the nine tracts included in the last blanket deed of trust, and that the last blanket deed of trust was second and inferior to each of these nine former deeds of trust.

It seems that after the execution of the blanket deed of trust for $4,500 hereinabove mentioned, E. F. Booty became involved in considerable financial difficulties, and failed to meet the interest on the several indebtedness held by O'Connor, executor, and also failed to pay the taxes on the several tracts of land involved in the several deeds of trust and liens held by O'Connor, executor, and appealed to R. E. Brooks, his brother-in-law, for aid. Later, after considerable negotiations between O'Connor, executor, and Brooks, Brooks purchased the $4,500 note last above described, and the deed of trust lien securing same. O'Connor transferred this note and deed of trust to Brooks by written instrument, the transfer from O'Connor, executor, to Brooks contained the following provision:

"The said Deed of Trust hereinbefore referred to and herein assigned creates a blanket lien upon same eight parcels of land in Jackson County, Texas, and one parcel of land in Victoria County, Texas, and in making this transfer and assignment of the lien created by the Deed of Trust aforesaid the lien of said deed of trust is here declared to be secondary to and inferior to the liens described and defined and fixed by nine deeds of trust executed by L. W. O'Connor, Trustee, to secure Wm. J. O'Connor, Managing Executor under the will of Thos. M. O'Connor, deceased, in the payment of nine several notes; and in making this transfer and assignment grantor distinctly limits the lien of said deed of trust here assigned so that said lien is a lien secondary to the lien of said nine deeds of trust on said nine several parcels of lands to the extent of the principal of said nine notes and the interest to accrue on said nine notes from the 1920 maturities of said interest on the principal of said notes and any and all future interest to accrue on said nine notes, and all interest on past due interest on said nine notes; and reserves the right to extend the time of payment of any interest that is now due or may become due on said nine notes or any of them and to enter into agreement with the said E. F. Booty and his wife, or E. F. Booty alone to received from the said E. F. Booty interest at the rate of eight per cent per annum, on all past due interest that may accrue on said nine notes or any of them, and to grant such extension and to charge interest at the rate of eight per cent per annum on all past due interest due and to become due on said nine notes or any of them without consulting the said R. E. Brooks; and any extension of the indebtedness represented by the note here now assigned shall contain a provision recognizing the right of grantor herein to extend the payment of interest and to charge interest at the rate of eight per cent per annum on all past due interest on said nine notes or any of them.

"At the time of executing this assignment the interest on all of said nine notes has been paid to the 1920 interest maturity date thereon. and interest on interest on sums accruing as interest to 1920 interest maturity dates, leaving due upon the notes held by grantor herein the principal of said nine notes and interest, and interest upon interest, accruing from 1920 interest maturity dates on said nine notes."

It will be noted that this transfer expressly discloses that O'Connor, executor, retained a separate and distinct first lien against each of the nine tracts included in the blanket deed of trust; which was conveyed to Brooks. Furthermore the transfer to Brooks expressly limits the prior rights of O'Connor, executor, to a first and superior lien and says nothing about retaining a superior title to each of the above nine tracts. Also it seems that about the time that Brooks took over the ·above $4,500 note from O'Connor, executor, by the written transfer above mentioned, he, as a part of the same general transaction paid to O'Connor, executor, several thousand dollars to be applied to interest, and taxes due by Booty on the nine tracts of land covered by the several individual deeds of trust retained by O'Connor, and the blanket deed of trust purchased by Brooks.

After the above transactions had transpired E. F. Booty died intestate on June 30th, 1922, leaving surviving him his wife, Mrs. Gertrude Booty, and two minor children. Mrs. Booty, on October 30th, 1922, duly qualified as administratrix of the state of E. F. Booty, deceased. Also in January, 1923, Mrs. Booty qualified as guardian of the estates of the two minor children of herself and E. F. Booty, her deceased husband. Also it is admitted that Wm. J. O'Connor is the duly qualified and acting managing executor of the estate of Thos. M. O'Connor, deceased.

After the happening of the above events O'Connor, executor, filed suit in the district court of Jackson county, Texas, against Mrs. Booty, individually, and as executor and . guardian, and against the two minor children of E. F. Booty, deceased, and also against Brooks in trespass to try title to recover the title and possession of the 160 acres of land here involved. In this suit O'Connor, executor, asserted his superior title to the 160 acres of land by virtue of being the holder of the original vendor lien notes, and superior title securing same. In this connection it will also be noted that O'Connor, executor, has refused to submit his claim to the probate court. Also in this first suit the other eight tracts, and several liens and deeds of trust covering them were not brought into litigation, but O'Connor, executor, only brought into litigation this one 160-acre tract, and asserted a superior title therein as against all of the Bootys, the Booty estate and Brooks.

The Bootys, the Booty estate and Brooks answered in the above case by various pleas, which in the interest of brevity we do not here set out, but refer to the opinion of the Court of Civil Appeals, 287 S. W., 282, for a full statement thereof.

On trial in the district court in this first case judgment was rendered for O'Connor, executor, against all of the Bootys, the Booty estate and Brooks, awarding O'Connor, executor, the title and possession of the 160 acres of land here involved, and divesting title out of the Bootys, the Booty estate and Brooks, and adjudging that they and each of them had no interest therein.

The above case was duly appealed by the Bootys, the Booty estate and Brooks to the Court of Civil Appeals at Galveston, which court on original hearing in all things affirmed the judgment of the district court.

The Bootys and the Booty estate proceeded no further with the litigation, and filed no motion for rehearing in the above first case. Brooks, however, filed a motion for rehearing, and on consideration of such motion, the Court of Civil Appeals granted the same and set aside its original judgment in so far as it applied to Brooks, and in so doing held that O'Connor, executor, had no right to assert a superior title in the land against Brooks. The final result of this first case was that judgment was rendered by the Court of Civil Appeals affirming the judgment of the district court as against the Bootys and the Booty estate, but reversing and rendering such judgment as applied to Brooks. We here quote the following portion of the opinion of the Court of Civil Appeals (287 S. W., 282, 290) in the first case:

"When, therefore, they came to embody their mutual understanding thus arrived at in the formal assignment, they affirmatively provided that Brooks' debt and mortgage should constitute a lien on the land alongside that of the appellees; the only limitation or reservation expressed being that his lien should be secondary to theirs 'to the extent of the principal and interest' on their debt. In the light of the undisputed evidence referred to, it becomes plain that the purpose and effect of these provisions was to merely postponed appellant's note and lien to the first lien the appellees held, thereby preventing any possibility of his participating ratably with them in any foreclosure under their debt, and not to still preserve to themselves an originally existing right to rescind the sale and recover the land, as we before concluded.

"In the case of Edwards v. Dickson, 66 Tex., 617, 2 S. W., 720, the Supreme Court, in quoting 2 Pomeroy on Equity, sec. 804, say:

" 'Equitable estoppel is the effect of the voluntary conduct of a party whereby he is precluded, both at law and in equity, from asserting the rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has, in good faith, relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, of contract, or of remedy.'

"The Supreme Court of the United States, in Dickerson v. Col-

grove, 100 U. S., 578, 25 L. Ed., 618, thus states the ground upon which equitable estoppel rests:

" 'The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted.'

"We think this principle rules the case at bar. From the uncontroverted proof it now seems to us to conclusively appear that the language and conduct of the appellees with reference to the relative status of the two liens they held led the appellant to buy the second one in reliance upon an understanding that it would be subordinate to theirs only in respect to priority of payment, and that, knowing then that he so acted, they should not now be permitted to disappoint his expectation.

"It follows from these conclusions that the motion below of appellant Brooks for peremptory instruction in his behalf should have been granted, and that both courts have heretofore erred in not so holding. His motion for rehearing will therefore be granted, and, in so far as concerns him, the prior judgments of both courts will be reversed, and judgment will here be entered that appellees take nothing against him on their suit to recover the land. No motion for rehearing having been filed by the other appellant, our former judgment as to her remains undisturbed. This judgment shall in nowise affect the O'Connors' right as against Brooks to foreclose their prior lien.

. "Motion of appellant Brooks for rehearing granted, and trial court's judgment as to him reversed and rendered."

The effect of the above holding, and the judgment thereunder, was to divest the Bootys, and the Booty estate of all title and interest in the 160 acres of land here involved, and vest all title owned or held by them in O'Connor, executor, but to leave O'Connor, executor, and Brooks, as between themselves, with their respective liens. This left O'Connor, executor, with a first lien and Brooks with a second lien. Also the above judgment has effect as between O'Connor and Brooks to decree that O'Connor has no superior title, but only a bare first lien.

The Supreme Court refused writ of error in the above cause and the judgment became final.

After the rendition of the final judgment by the Court of Civil Appeals in the first cause and the refusal of the writ of error, the instant suit was filed by O'Connor, executor, against R. E. Brooks. This second suit is the cause involved in this appeal.

The present suit was filed by Wm. J. O'Connor et al. against R. E. Brooks and seems to be a suit for the settlement and adjustment of rights between the parties as regards this 160 acres of land alone, and in the alternative to have the record of Brooks' second lien upon the land removed as a cloud upon the O'Connors' title. The plaintiffs' pleadings

are very voluminous, and are fully stated in the opinion of the Court of Civil Appeals, 15 S. W. (2d) 182, and we refer to that opinion for a full statement thereof. We, however, make the following condensed statement of O'Connor's pleadings.

It is alleged that E. F. Booty is dead; that Mrs. Gertrude Booty, his surviving wife, is the duly appointed, qualified and acting administratrix of his estate, and also the duly appointed, qualified and acting guardian of the estates of the two minor children of E. F. Booty, deceased, and Mrs. Gertrude Booty, and that the administration was then pending in the county court of Jackson county, Texas. It is also alleged that such administration had been in force since October 30th, 1922. The petition then pleads the history and various transactions whereby E. F. Booty, deceased, acquired the 160 acres of land in litigation here; the various notes and deeds of trust executed by E. F. Booty for the benefit of the O'Connors; and the transactions between O'Connor, executor, and Brooks. The pleadings then allege the former suit between the O'Connors on the one side, and the Bootys and Brooks on the other, and the result thereof.

After pleading as above the O'Connors then plead the transactions by which Brooks acquired the $4,500 note secured by the blanket deed of trust against the eight tracts of land in Jackson county, and the one tract in Victoria county. It is then alleged that this blanket deed of trust constitutes a lien on the 160 acres in question inferior to the deed of trust and lien held by the plaintiffs; and that plaintiffs do not know what amount is due on said second deed of trust. It is then alleged that the plaintiffs have requested Brooks to pay them the amount due upon their purchase money notes, and have offered to receive the same in satisfaction of their claim against the land, and that Brooks has failed and refused and still fails and refuses to pay, or to offer to pay the plaintiffs the amount due upon their purchase money note.

The plaintiffs then invoke the equity powers of the district court of Jackson county, Texas, to settle the equities between them in the manner fully set out in the opinion of the Court of Civil Appeals, and finally pray as follows:

"Premises considered, plaintiffs pray that defendant be cited in the terms of the law to appear and answer this petition, and that the defendant be required to set up all of his claims, rights and interests upon and to the land aforesaid, that if the said Brooks fails by his answer herein to show or allege that he has any legal or equitable rights or liens in or to said land, or some of it, or if upon final hearing it be determined that said Brooks has no lien upon said land, or any of it, that then plaintiffs have judgment against said Brooks removing all said cloud upon their title to said land and quieting their said title; and that if it be determined that said Brooks in fact has any lien upon said land, or any of it, securing any amount justly due him, that the amount of same be determined

by the judgment of the court in this cause, and that the said lien for such amount be determined and adjudged to be inferior and subordinate to the rights of plaintiffs and also in such event that the court hear and determine from the evidence the amount legally and justly due plaintiffs upon the purchase money notes aforesaid and the renewals thereof, with interest and attorneys fee, and adjudge and decree that the same is secured by paramount lien upon all of said land in every respect superior and prior to the rights of defendant, Brooks, and that when the court by its decree herein foreclose the said superior right and lien of plaintiffs as against the said Brooks and order the sale of all of said land and premises as under execution and direct that the proceeds of such. sale be first applied to the payment of all costs of this action and costs of sale, and, second, to the payment of the amount so adjudged and determined to be due these plaintiffs, and, third, that the remainder of such proceeds be applied to such claim of defendant, Brooks, or otherwise, as the facts may warrant. And plaintiffs further pray for all such other and further relief, general and special, legal and equitable, as they may show themselves entitled to receive, and as in duty bound will ever pray."

The pleadings of the defendant, Brooks, are fairly stated in the opinion of the Court of Civil Appeals, 15 S. W. (2d) 182, 195, and we copy the following portion of such opinion:

" 'Now, comes defendant, R. E. Brooks, and in answer to plaintiffs' original petition filed herein, states to the Court that this court ought not to entertain the cause of action set forth therein and to further take cognizance of the same, because this court has no jurisdiction of the matters and things set forth therein, but exclusive jurisdiction of the same is vested in the Probate Court of Jackson County, Texas, for this:'

"This plea, which is presented as a part of his amended answer on which the case was tried, then sets out the substance of the allegations of plaintiffs' petition as to the execution of the vendor's line notes by E. F. Booty, and the transfer of these notes, together with the superior title held by the vendor of the land, to plaintiffs, and also the subsequent execution by Booty and wife of a $4500.00 note to plaintiffs' predecessor in title, secured by a deed of trust on the land, and the transfer and assignment to defendant of said note, together with the lien created by said deed of trust to secure its payment. The plea further sets out the allegations of plaintiffs' petition, that by the express terms of the transfer of said note and lien the defendant, Brooks, 'contracted, agreed and bound himself with plaintiffs that such second lien, deed of trust should be and now is in every respect inferior and junior to the rights, title, liens and interests of plaintiffs in said land to the extent of the purchase money and interest and attorneys' fees thereon.' It is then alleged, in the answer, that:

" 'This defendant admits, as alleged by plaintiffs, that plaintiffs

obtained the note set out in plaintiffs' petition for $4500.00, and received the deed of trust from the said Booty and wife to secure the same, and that plaintiff assigned said note and said deed of trust and the lien thereof to this defendant, and that it was expressly provided and stipulated in said assignment that the note for $4500.00 and the lien in the deed of trust to secure the same expressly provided that this defendant in accepting said assignment did so with the distinct agreement and understanding that the same was in every respect junior, subordinate and secondary to the lien of plaintiffs sought to be foreclosed in this case; and this defendant avers that he has never claimed to the contrary, but has always admitted and now admits and asserts that the said lien transferred to him, together with the transfer of said $4500.00 note, is junior, subordinate and secondary to the lien of plaintiffs.

" 'This defendant further says that he has no claim to said tract of land or interest in the same of any character or sort and has not and does not now assert the same save and except as a junior lien holder upon said land to secure the indebtedness of said Booty to him, his said liens as aforesaid being a subordinate and secondary and junior to that of the plaintiffs; that there has never been any issue or dispute between plaintiffs and this defendant as to the priority of plaintiffs' said lien on said tract of land, and this defendant further avers that there has never existed and does not now exist any equities or conflicting claims of any sort to be adjusted between plaintiffs and this defendant. That the undisputed facts are that plaintiffs have a prior and undisputed indebtedness secured by liens on the lands in controversy which are first and superior to the indebtedness and liens of this defendant on said land.

"This defendant further avers that in the assignment of plaintiffs to this defendant of the $4500.00 note, together with the deed of trust securing the same, as alleged by plaintiffs, it is expressly stipulated and provided therein that the said debt evidenced by said $4500.00 note and the said deed of trust executed to secure the same, were junior, subordinate and scondary to the debt and lien sought to be foreclosed by plaintiffs in this cause, and defendant asserts that this defendant's claim of lien on said land to secure said $4500.00 note cannot and does not constitute any cloud upon plaintiff's title, as said deed of assignment shows upon its face that the defendant's said lien is subordinate, secondary, junior and inferior to plaintiff's said lien.

" 'That this court, by reason thereof, has no jurisdiction of the matters and things set forth in plaintiffs' said petition, but that such matters and things are exclusively cognizable in the Probate Court of Jackson County, Texas.

" 'That it is true that the defendant E. F. Booty died on the 30th day of June, 1922, in the County of Jackson, State of Texas, and that he died intestate, and that at the time of his death he was a resident of the

County of Jackson, State of Texas; that on the 18th day of October, A. D. 1922, the defendant Mrs. Gertrude Booty was by decree of the County Court of Jackson County, Texas, appointed Administratrix of the estate of E. F. Booty, deceased, and that she thereafter gave a bond as such administratrix in the amount fixed by the court and as required by law, and which bond has been duly approved by the Judge of said court; that on the 30th day of October, A. D. 1922, the said Gertrude Booty made and filed in said court her oath as said administratrix, and on the 30th day of October, 1922, letters of administration on the estate of said E. F. Booty, deceased, were granted to her and she thereby became and continued to be and is now the duly qualified and acting administratrix of the estate of E. F. Booty, deceased; that such administration is still pending and open, having never been closed.

" 'Wherefore, this defendant prays that this court will not take further cognizance of the matters and things set forth and contained in plaintiff's said petition, but that this court will dismiss the same.'

"This plea was sworn to by the defendant.

"The defendant further answered as follows:

" 'And should this defendant's plea to the jurisdiction of the court be overruled without any manner waiving the same, but still insisting upon and relying upon the same, defendant for further answer to such petition avers and states:

" '1. That he demurs to the allegations in the same and says that the same are insufficient in law and show no cause of action against this defendant.

" '2. Specially excepting to the allegations in said petition, this defendant says that the same are insufficient in law because it is not averred in said petition that the debt and lien of plaintiffs were ever presented to the said administratrix of the estate of E. F. Booty, deceased, or to the Probate Judge of Jackson County, Texas, for allowance and approval as required by law; nor is there any averment therein that said administratrix has ever refused to allow said lien or debt of plaintiffs, or that the Probate Court of Jackson County has ever refused to approve said lien or debt.

" '3. Defendant further specially excepts to said petition because said allegations show upon their faces that the Probate Court of Jackson County alone has jurisdiction of the matters and things set forth in said petition, and has exclusive jurisdiction over the enforcement and foreclosure of plaintiffs' said debt and lien, and that this court has no jurisdiction thereof.

" '4. Defendant specially excepts to that part of the prayer in plaintiffs' said amended original petition whereby they seek the relief that their superior title vendor's lien and deed of trust lien on said land to be established, fixed and decreed to be in every respect prior, paramount and

superior to any and every right of this defendant, and that the court by its decree not only determine and adjudge the amount of plaintiffs' indebtedness, but that the plaintiffs' lien be foreclosed, and that the decree of this court order the sale of all lands and premises as under execution, and that the proceeds of such sale be applied to the amount due the plaintiffs as determined by the decree of this court, because even if this court has jurisdiction to foreclose the liens of plaintiffs, that this court would not have jurisdiction to foreclose the liens of plaintiffs and order the sale of said property because whatever judgment this court should render in the premises must be enforced by and through the Probate Court alone, this court having no jurisdiction or authority to enforce its decree or foreclosure.

" 'Defendant further prays that plaintiffs take nothing by their suit, but that this cause of action be dismissed and this defendant go hence without day and have judgment for costs.' "

The case was finally tried in the district court without a jury and resulted in a judgment for the O'Connors vesting them with title in the land, and cancelling and annulling Brooks' lien. We here copy the following from such judgment:

" 'Be it remember that the above styled and numbered cause was regularly reached and called for trial on this, the 29th day of September, A. D. 1927, whereupon came the plaintiffs and defendant in person and by attorney, and waived a jury, and announced that they would submit all matters of fact as well of law to the court, and all parties announcing ready for trial, thereupon the defendant presented his plea and demurrers to the jurisdiction of this court in this cause, and the court having heard the same, and the evidence thereon adduced (the defendant announcing that he introduced his evidence solely under and for the purpose of sustaining his plea to the jurisdiction, and for no other purpose), and the court having heard argument of counsel is of the opinion that said plea and demurrers to the jurisdiction of the court in this cause are not well taken and should be overruled, and it is ordered, adjudged and decreed by the court that defendant's plea to the jurisdiction and his exceptions to plaintiffs' petition challenging the jurisdiction of the court be and they are hereby in all respects overruled, to which action and judgment of the court the defendant then and there in open court excepted.

"And the cause proceeding to trial upon the merits of the case, and the defendant presenting his general and special exceptions to the plaintiffs' petition, and the court having heard the same and arguments thereon, is of the opinion that same are not well taken, and it is accordingly by the court ordered, adjudged and degreed that each and all of said general and special exceptions of the defendant be and the same are hereby in all respects overruled, to which action and judgment of the court the defendant then and there in open court excepted.

"Thereupon, the court having heard the plaintiffs' petition, the defendant announced to the court that he would not further plead in this cause other than his plea and exceptions to the jurisdiction of the court and his general and special exceptions to plaintiffs' petition and prayer that plaintiffs take nothing by this suit, nor submit any evidence whatsoever save the evidence he introduced under and in support of his plea to the jurisdiction of the court, and said nothing in bar of plaintiffs' action. Wherefore the plaintiffs ought to recover as prayed in and according to the merits of the cause of action set forth in their petition. And the court having heard the pleadings, evidence and remarks of counsel, and the defendant expressly refusing to assert or set up in answer to the merits of the suit, any claim, interest or lien in or upon the land hereinafter described, and specifically refusing to submit any proof or evidence to the court tending to prove or establish any right, title, lien or interest in or upon said land, or the nature, extent or amount of his claims, liens or interest upon or in said land, if any he has, the court finds and adjudges that plaintiffs are the legal owners of the land and premises hereinafter described and are entitled to have the cloud on their title to the same removed and their title quieted as hereinafter decreed."

The judgment then proceeds to cancel and annul Brooks' deed of trust and lien in so far as same affects or clouds the title of the O'Connors in the 160 acres of land here involved, and decrees that Brooks shall be "forever debarred and foreclosed from having, demanding, setting up or claiming in any way or by any proceeding any right, title, mortgage or interest, claim or demand, legal or equitable in or to the land or any part thereof, by reason of said deed of trust or the promissory note described therein." The judgment then decrees costs against Brooks. Brooks appealed from the above judgment to the Court of Civil Appeals at Galveston, which court in all things affirmed the judgment of the district court. 15 S. W. (2d) 182, Justice Graves dissenting. The case is before this court on writ of error granted on application of Brooks.

The case is presented in this court by various assignments of error, but as we construe them all of such assignments amount to two main contentions, (a) that the district court was utterly without jurisdiction to hear and determine the case, and, (b) that the district court had no right or power to render the judgment rendered.

We shall first proceed to discuss and decide the assignments which assail the power or jurisdiction of the district court to entertain the cause at all. As we understand the contentions of the plaintiff in error in this respect they amount to this. It being conclusively shown that E. F. Booty is dead, and that an administration is pending on his estate since a few months after his death in the county court of Jackson county, and there being no dispute between the parties hereto as to the priority of liens, the

county or probate court is the only court vested with jurisdiction to fore-close the lien on the land in question.

In our opinion such assignments and contentions should be overruled. When the former cause between the O'Connors upon the one hand and the Bootys and Brooks on the other, concerning this very land, and largely these very issues was terminated by final judgment which divested the E. F. Booty estate and the Bootys of all title in the land, and vested same in the O'Connors, the effect of such judgment was to abrogate and term-inate all liens the O'Connors had against the land in so far as the Booty estate was concerned, and at the same time to terminate, annul, and satisfy the indebtedness secured by the O'Connors' deed of trust in so far as same constituted a claim against the E. F. Booty estate, but to leave such deed of trust and indebtedness in force in so far as same constituted a bare first lien on the 160 acres of land as between the O'Connors and Brooks. This being the case, of course the O'Connors could not invoke the juris-diction of the probate court. They had no claim against the Booty estate, and no lien to enforce on any property belonging to it.

Since the O'Connors had no claim against the Booty estate and no lien on any property belonging to it, but by express judgment and decree of the Court of Civil Appeals at Galveston did have a cause of action to be litigated and adjudicated with Brooks, it follows that some court must have jurisdiction to hear and determine the same. The cause was one concerning land and a lien on land, and from its very nature it is such a cause that the district court is the only tribunal with jurisdiction in the premises. Gregory v. Ward, 118 Texas, 526, 18 S. W. (2d) 1049.

In the above cited case our Supreme Court, speaking through Judge Cureton, held that in a case which from its nature involves controversies and issues over which, and between parties over whom, the probate court could not have jurisdiction, and the controversy and parties are such that the powers of the probate court are inadequate to grant full relief to which a party is entitled, the district court has jurisdiction and may grant relief. In support of this holding the Supreme Court cites Cannon v. McDaniel, 46 Texas, 303; George v. Ryon, 94 Texas, 317, 60 S. W., 427; Lauraine v. Ashe, 109 Texas, 69-75, 191 S. W., 563, 196 S. W., 501; Lauraine v. Masterson (Tex. Civ. App.), 193 S. W., 708.

It is true that in Gregory v. Ward, supra, the court held that the judgment must be performed through the probate court. This was the correct holding in that case, but in the case at bar such a disposition is impossible because all title of the Booty estate in the 160 acres of land in question, and all liens of the O'Connors have been wiped out and destroyed in so far as any issue between the O'Connors and the Booty estate is concerned. Also the debt represented by the deed of trust has been wiped out, and satisfied in so far as any issue between the O'Connors and the Booty estate is concerned. In such a case the probate court cannot

allow a claim for O'Connor, executor, nor foreclose a lien against the Booty estate in his favor. Also if the district court cannot grant relief as between the O'Connors and Brooks then the O'Connors are left with a right decreed to them by a final judgment of the Court of Civil Appeals, but absolutely without a remedy and without a forum in which to enforce such right.

Also, as before stated, Brooks has a blanket lien against nine tracts of land, one of which is the 160 acres here involved. The O'Connors have a separate and distinct lien against each of these nine tracts. Manifestly, Brooks would be unable, in a suit involving one tract only, to assert exactly what interest or lien he has in that particular tract. It follows that in order for all rights, liens and equities to be fully and equitably adjusted, it will be necessary to bring all liens, lands and parties interested into one suit.

For the reasons stated, the judgments of the Court of Civil Appeals and the district court should be reversed, and the cause remanded to the district court for further proceedings in accordance with this opinion.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. Cureton, Chief Justice.